'08 CIV 5180

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

T-MOBILE USA, INC.

                    Plaintiff,

    -against-

SBC INTERNET SERVICES, INC. d/b/a/ AT&T
INTERNET SERVICES, INC.

                  Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**COMPLAINT**

Index No. ___ 2008

U.S.D.C. S.D.N.Y.
CASHIERS

ECF CASE

Plaintiff T-Mobile USA, Inc. ("T-Mobile"), by its attorneys Proskauer Rose LLP, for its

Complaint against SBC Internet Services, Inc. d/b/a AT&T Internet Services, Inc. ("AT&T"),

alleges as follows:

## NATURE OF THE ACTION

1.     This action is brought for declaratory and injunctive relief and damages because

of AT&T's willful breach of contract and unfair competition. AT&T and Starbucks Corporation

d/b/a Starbucks Coffee Company ("Starbucks") have created a "Free Wi-Fi Promotion" that

violates T-Mobile's rights to exclusively sell, market and promote wireless Internet service

within all but two markets of Starbucks' U.S. stores. Just four months after negotiating and

signing the agreement to give T-Mobile these exclusivity rights, Starbucks and AT&T launched

a nationwide promotion to offer what is branded as AT&T Wi-Fi service in conjunction with the

sale of Starbucks Cards and Starbucks products in stores.

2.      T-Mobile's exclusive relationship with Starbucks dates back to 2002, and represents a significant investment for T-Mobile in terms of equipment, effort and resources. T-Mobile anticipated, and the parties explicitly agreed, that T-Mobile's exclusive rights to market, offer and sell Wi-Fi services in Starbucks stores would continue until all stores in a given market were fully transitioned to AT&T. To date, only two markets (the Bakersfield, California and San Antonio, Texas markets) have fully transitioned to AT&T, and all other stores remain subject to T-Mobile's exclusivity rights. Nonetheless, despite having no right to do so, AT&T and Starbucks have jointly devised and have launched a "free" Wi-Fi promotion in *all* stores – not just the two markets that have transitioned. If AT&T or Starbucks wanted to offer "free" Wi-Fi in non-transitioned stores for Starbucks customers, as they are now doing, they should have – and, indeed, were contractually required to – negotiate such an arrangement with T-Mobile. They did not, and T-Mobile has regrettably been forced to file this action.

3.      Specifically, T-Mobile and AT&T are party to two agreements, called the Transition Agreement and the Bi-Lateral Roaming Agreement. Starbucks is also a party to the Transition Agreement. Under the Transition Agreement, T-Mobile has the exclusive right to market and sell Wi-Fi services for access to the Internet in virtually all Starbucks stores. The Transition Agreement also gives T-Mobile the exclusive right to have its marketing materials on display in those Starbucks stores.

4.      In the Bi-Lateral Roaming Agreement, T-Mobile agreed to give AT&T subscribers, without charge to AT&T by T-Mobile, access to the T-Mobile Wi-Fi network when in those Starbucks stores in which T-Mobile is the provider of Wi-Fi services (and vice versa). As alleged above, AT&T has arranged with Starbucks to provide "free" Wi-Fi service to

Starbucks customers who are not subscribers to AT&T service offerings; and to do so they are using AT&T's access to T-Mobile's network pursuant to the Bi-Lateral Roaming Agreement.

5.    AT&T's violations of T-Mobile's contractual rights will result in the loss of the revenue that T-Mobile would otherwise earn from the exercise of its exclusive right to sell Wi-Fi access in Starbucks stores.  The violations also threaten T-Mobile with immediate irreparable injury to its business reputation reputation, loss of goodwill, injury to its relations with customers, and through increasing its costs in ways that will be difficult to measure, all as alleged in further detail below.

## THE PARTIES

6.    Plaintiff T-Mobile is a Delaware corporation with its principal place of business at 12920 S.E. 38th Street, Bellevue, Washington 98006.

7.    Defendant AT&T has represented that it is a California corporation with its principal place of business at 175 E. Houston, San Antonio, Texas 78205.

## JURISDICTION AND VENUE

8.    This Court has diversity jurisdiction over this matter because the parties are citizens of different States and the amount in controversy exceeds $75,000 exclusive of interest and costs.

9.    Venue is appropriate exclusively in this Court pursuant to the jurisdictional consent provisions of the Transition Agreement entered into February 1, 2008 among, *inter alia*, T-Mobile and AT&T, which is the subject of this dispute.  Venue is further appropriate in this Court pursuant to 18 U.S.C. Sec. 1391(a)(1) and (2).

## FACTS COMMON TO ALL CAUSES OF ACTION

**The Planned Transition of Wi-Fi Services at Starbucks**

10.     Since January of 2002, T-Mobile has been the exclusive provider of Wi-Fi (wireless internet services) within Starbucks coffeehouses nationwide. T-Mobile provided its customers with access to its Wireless Local Area Network ("WLAN Network") at Starbucks locations, which enabled those customers to use a laptop computer or other device capable of Internet access to access the Wi-Fi network, log in using his or her T-Mobile Wi-Fi account information, and enjoy Internet access. T-Mobile made a very significant investment in the technology and equipment necessary to provide Wi-Fi service in the many thousands of Starbucks stores in the United States.

11.     T-Mobile's Wi-Fi service in Starbucks stores was not limited to just existing T-Mobile customers. Individuals who did not have a Wi-Fi account with T-Mobile could purchase access to Wi-Fi for a designated amount of time. For example, T-Mobile sells day passes, which are good for 24 hours, and also offers, among other plans, pay-as-you-go plans, and monthly and annual service subscriptions. These passes and plans are available for purchase on T-Mobile's website and at Starbucks, as well as other locations where T-Mobile provides Wi-Fi service, including, for example, in many airports and hotels. Individuals with T-Mobile Wi-Fi accounts (whether through a subscription or a day pass account) are able to use their Wi-Fi account at any place where T-Mobile provides Wi-Fi service, including but not limited to Starbucks stores.

12.     Both Starbucks and T-Mobile enjoyed significant benefits from this relationship. Starbucks was able to provide additional services to its customers that helped it compete in the marketplace. T-Mobile was able to promote itself to both existing and potential customers through branding and promotion of its services at the many Starbucks stores, and to obtain

additional users by marketing and selling its passes at Starbucks. Further, T-Mobile benefited from its exclusive association with the well-known Starbucks brand.

13.    In early 2008, Starbucks, AT&T and T-Mobile negotiated a series of agreements intended to facilitate a structured seamless transition from T-Mobile to AT&T for the provision of Wi-Fi service in Starbucks stores.

14.    In order to accomplish this goal, the parties entered into several interlocking agreements, including: (1) a Transition Agreement dated February 1, 2008, among Starbucks, T-Mobile and AT&T (the "Transition Agreement"); and (2) a Bi-Lateral Roaming Agreement dated February 1, 2008 between AT&T and T-Mobile (the "Bi-Lateral Roaming Agreement").

15.    Pursuant to these agreements, Starbucks stores were to be converted on a market-by-market basis, through the removal of T-Mobile access lines and equipment and the installation of AT&T access lines and equipment. Upon the conversion of all stores in a designated Market, that Market would become a "Transitioned Market." At that point, AT&T was to provide the Wi-Fi services for all stores in the Transitioned Markets. Until a market became Transitioned, however, T-Mobile was to continue providing Wi-Fi services – and had the exclusive right to market and sell those services in the Starbucks stores within that Market.

16.    Throughout the period of the Transition, and until January 4, 2009, AT&T and T-Mobile agreed that each wireless service provider would provide Wi-Fi service to the other provider's subscribers (defined as "End Users") in Starbucks stores without either party charging the other. Each party promised to provide access *only* to the other party's End Users.

17.    In order to facilitate the provision of service to End Users, the parties agreed upon a form of the start-up web page that an individual seeking to use Wi-Fi services would access to sign in to his or her Wi-Fi account (this type of pre-log in page is know as a "Splash Page").

AT&T and T-Mobile each agreed to display a Splash Page to users in the Starbucks stores for which they provided Wi-Fi service, which would contain branding for both AT&T and T-Mobile. Further, the Splash Page would provide a mechanism for the End User to access the Internet by signing into, and being authenticated by, an existing subscription account he or she held with the other service provider.

18.    However, each party providing services in a given Market (AT&T in Transitioned Markets, and T-Mobile in Non-Transitioned Markets) maintained the exclusive contractual rights to (1) sell roaming access to third parties (*e.g.*, the right to contract with other providers of Wi-Fi service who would pay a fee to permit their subscribers to "roam" onto the Wi-Fi network provided and thus access the Wi-Fi service); (2) provide for the onsite sale of Wi-Fi services within Starbucks stores in the Market; and (3) display and use marketing materials within the Starbucks stores in that Market.

19.    Thus, T-Mobile negotiated for and obtained the exclusive rights of sale and marketing of Wi-Fi services within all Non-Transitioned Markets until such time as they became Transitioned Markets. As a result, T-Mobile was also to continue to enjoy, until a Market transitioned, the benefit of an exclusive association with the Starbucks brand in Starbucks stores.

20.    The agreement provided AT&T with limited rights to promote the transition of Wi-Fi service providers. Specifically, AT&T was authorized to "promote or advertise the Wi-Fi Services *to be provided by AT&T in Stores*" (emphasis added).

21.    In other words, the purpose, intent and plain meaning of the various agreements surrounding the Transition was to provide for a smooth transition, to ensure that each of T-Mobile and AT&T would receive the branding and sales rights within the Markets in which it

provided service, and to ensure service for the End Users of both AT&T and T-Mobile throughout the transition period in all Starbucks locations.

22.    To date, only two Markets – the San Antonio, Texas and Bakersfield, California Markets – have been transitioned from T-Mobile to AT&T. Thus, all of the other markets in the United States and, therefore, virtually all Starbucks stores nationwide, remain T-Mobile markets where T-Mobile has the exclusive rights described above.

**AT&T Violates the Terms of the Transition**

23.    On or about May 30, 2008, T-Mobile learned that Starbucks and AT&T had secretly developed a promotional plan under which they would offer "free" AT&T/Starbucks Wi-Fi even in stores in Non-Transitioned Markets. Of course, since T-Mobile provides the resources and equipment to support Wi-Fi service in Non-Transitioned stores, it is T-Mobile alone that is bearing the cost and burden associated with this "free" Wi-Fi offer.

24.    The promotion works as follows: Upon purchasing a Starbucks Card, the individual purchaser is directed to register that card via a Starbucks.com internet page that may be accessed without need to log in to a particular Wi-Fi service provider. Once registration is complete, the individual is directed to an AT&T log-in page via which he or she can access the Internet through the Wi-Fi network at Starbucks stores (for the vast majority of stores, this is T-Mobile's Wi-Fi network). As long as the Starbucks Card has been used within the past 30 days, its purchaser can access Starbucks' store Wi-Fi network.

25.    The Wi-Fi access to be provided through the Starbucks Card promotion is limited to access while at Starbucks. Unlike subscribers to an AT&T Wi-Fi or DSL account, Starbucks Card holders cannot use their user names and passwords to access the Internet in places other than Starbucks where AT&T Wi-Fi networks are available. However, AT&T and Starbucks

have set up their promotion such that the Starbucks cards that enable "free" Wi-Fi service are available and can be used at all Starbucks stores, including Starbucks stores in non-Transitioned Markets, thereby forcing T-Mobile to support these cardholders on the T-Mobile Wi-Fi network even though T-Mobile agreed to provide access only to AT&T's existing subscribers.

26.    By providing free Wi-Fi service over T-Mobile's networks to anyone with a Starbucks Card within a non-converted Starbucks, AT&T has breached the limitations of the Bi-Lateral Roaming Agreement.

27.    AT&T's material breaches of the Transition Agreement and Bi-Lateral Roaming Agreement include:

  a.  The marketing, sale and use of the Starbucks Cards in Non-Transitioned Markets deprives T-Mobile of its negotiated right to be the exclusive seller of Wi-Fi services in those stores.

  b.  The marketing, sale and use of the Starbucks Cards in Non-Transitioned Markets deprives T-Mobile of the opportunity to exclusively sell Wi-Fi roaming access to third parties, as those third parties' subscribers may instead use "free" Wi-Fi services purportedly provided by AT&T.

  c.  Requiring Starbucks Cards users to access Wi-Fi through Starbucks.com, which in turn funnels users through an AT&T access point, diminishes T-Mobile's valuable co-branding rights during the Transition Period.

  d.  The sale and promotion of AT&T "free" Wi-Fi access throughout Non-Transitioned Markets, violates T-Mobile's exclusive right to display marketing collateral in Starbucks stores within such market.

e. The promotion of AT&T/Starbucks "free" Wi-Fi access in Non-Transitioned Markets, which access must necessarily be provided by T-Mobile, breaches the contractual limitations to promote the transition, which by its terms is limited to promotion of "Wi-Fi services *to be provided by AT&T*" (emphasis added).

f. The provision of "free" Wi-Fi services to any Starbucks customer who purchases a Starbucks card dramatically expands the universe of potential Wi-Fi users of T-Mobile's WLAN Network, creating the risk of spikes in usage, drains on that network and T-Mobile's resources, and therefore causes delays, frustrations and other harm to all users of T-Mobile's network.

28.    Under the Transition Agreement, AT&T expressly consented "to the exclusive jurisdiction of the federal court in New York, New York, for purposes of any legal action arising out of or related to this Agreement."

29.    The Bi-Lateral Roaming Agreement sets forth a multi-step process for resolution of disputes through mediation and arbitration. However, the Bi-Lateral Roaming Agreement provides that "[n]othing herein shall prohibit either Party from seeking and obtaining from a court of competent jurisdiction injunctive relief in order to preserve the status quo and/or avoid irreparable harm."

**The Harm to T-Mobile**

30.    The conduct of AT&T described above has caused T-Mobile monetary damages and such damages will continue and increase should AT&T continue its breaching conduct.

31.     These amounts include T-Mobile's loss of revenue from those T-Mobile current customers and potential future customers who (prior to AT&T's actions) purchased Wi-Fi services onsite at Starbucks stores through a T-Mobile day pass or pay-as-you-go service, and those T-Mobile customers who purchased Wi-Fi subscription access with the intent of using Wi-Fi primarily at Starbucks.  As a result of AT&T's breaching activities, those T-Mobile customers may terminate their Wi-Fi service relationships with T-Mobile.

32.     Moreover, AT&T's conduct will cause T-Mobile to incur irreparable damages to its customer goodwill, its business reputation and its customer relationships, all harms that are neither readily quantifiable nor reasonably compensable by money damages.  Further, T-Mobile is being deprived of its bargained for rights to benefit from the co-branding arrangement with Starbucks during the Transition Period.

33.     Finally, in those markets that have not been transitioned to AT&T (*i.e.*, all but two), it is T-Mobile that is solely bearing the burden and cost of providing and maintaining the WLAN Network Wi-Fi service that AT&T and Starbucks are now offering for "free" with the purchase of Starbucks cards.

## FIRST CAUSE OF ACTION
### Declaratory Judgment

34.     Paragraphs 1 through 33 are incorporated by reference as if fully set forth herein.

35.     AT&T has materially breached the Bi-Lateral Roaming Agreement and the Transition Agreement.

36.     Prior to AT&T's actions as set forth above and continuing until today, T-Mobile has performed all of its obligations under the Bi-Lateral Roaming and Transition Agreements.

37.     As a result of AT&T's material breach, T-Mobile is discharged from any and all obligations it otherwise had to perform under the Bi-Lateral Roaming Agreement.

38.    There is an actual, present and existing dispute among the parties regarding their respective obligations under the Bi-Lateral Roaming Agreement.

## SECOND CAUSE OF ACTION
### Breach of Transition Agreement

39.    Paragraphs 1 through 38 are incorporated by reference as if fully set forth herein.

40.    The Transition Agreement provides T-Mobile with certain rights as set forth above.

41.    The actions of AT&T are in breach of the Transition Agreement.

42.    The actions of AT&T, as set forth above, prevent T-Mobile from obtaining the benefits for which it bargained under the agreements.

43.    The actions of AT&T, as set forth above, further violate the implied covenant of good faith and fair dealing contained in the Transition Agreement, as in all contracts under New York law.

44.    T-Mobile has suffered, and will continue to suffer, injury as a result of AT&T's breach.

## THIRD CAUSE OF ACTION
### Breach of Bi-Lateral Roaming Agreement

45.    Paragraphs 1 through 44 are incorporated by reference as if fully set forth herein.

46.    The Bi-Lateral Roaming Agreement limits AT&T's ability to allow access to T-Mobile's network within Starbucks stores in Non-Transitioned Markets only to AT&T End Users.

47.    An individual who purchases a Starbucks Card and, through that card gains free access to Wi-Fi services solely inside the Starbucks store locations, is not an AT&T End User pursuant to the Bi-Lateral Roaming Agreement.

48.    AT&T has breached the Bi-Lateral Roaming Agreement by compelling T-Mobile to provide Wi-Fi services within Starbucks stores in Non-Transitioned Markets to Starbucks Card purchasers who are not AT&T End Users.

49.    In addition, the actions of AT&T violate the implied covenant of good faith and fair dealing contained in the Bi-Lateral Roaming Agreement, as in all contracts under New York law.

50.    T-Mobile has suffered, and will continue to suffer, irreparable damage to its goodwill, branding and customer relationships as a result of AT&T's breaches.

### FOURTH CAUSE OF ACTION
#### Unfair Competition

51.    Paragraphs 1 through 50 are incorporated by reference as if fully set forth herein.

52.    The acts of AT&T, as set forth above, constitute unfair competition.

53.    The acts of AT&T, as set forth above, were intentional, willful and grossly negligent.

54.    T-Mobile has suffered, and will continue to suffer, injury as a result of AT&T's conduct.

### PRAYER FOR RELIEF

WHEREFORE, T-Mobile demands judgment as follows:

a.    Temporarily, preliminarily and permanently enjoining AT&T from breaching the Bi-Lateral Roaming Agreement and the Transition Agreement;

b.    Declaring that AT&T is in material breach of the Bi-Lateral Roaming Agreement and that T-Mobile is discharged from all obligations and duties under such agreement accordingly;

c.    Awarding compensatory damages under the Transition Agreement in T-Mobile's favor in an amount to be proven at trial;

d.  Awarding T-Mobile its costs and reasonable attorneys' fees; and

e.  Such other and further relief as this Court deems just and proper.

Dated: June 5, 2008

PROSKAUER ROSE LLP

*Kzz J. Pm*

Ronald S. Rauchberg (RR 6157)
Bradley I. Ruskin (BR 8489)
Kevin J. Perra (KP 3723)
1585 Broadway
New York, NY 10036
(212) 969-3000

*Attorneys for Plaintiff*